UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

LEONARD J. BERWICK, JEFFREY D. SERVIN,
ESQ., and OSAGE CORP. d/b/a FIRST CITY
COMMUNICATIONS INC.,                          06 Civ. 2641 (JGK)

                    Plaintiffs,              OPINION AND ORDER

          - against -

NEW WORLD NETWORK INTERNATIONAL, LTD.,
NEW WORLD NETWORK USA, INC., COLUMBUS
COMMUNICATIONS, LTD., and BARCLAYS BANK
PLC,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

     Two business partners, Leonard Berwick and Jeffrey Servin,

brought this diversity tort action against Columbus

Communications, Ltd. ("Columbus"), and various other defendants,

after Columbus allegedly made untruthful statements in

connection with its bid to acquire a fiber optic communications

company that the plaintiffs had sought to purchase.

     The individual plaintiffs, through their company First City

Communications, Inc. ("First City"), allegedly formed a business

arrangement with owners of a Jamaican company, Jamaica Fibre

Optic Cable Co. Ltd. ("JFOC"), through which the plaintiffs

acquired rights to a government license allowing them to conduct

certain fiber optics business in Jamaica.  The plaintiffs then

sought to obtain financing to acquire New World Network USA,

Inc. ("NWN USA"), a company with an existing fiber optics ring

connecting South Florida to various locations in the Caribbean.
The plaintiffs allege that Columbus tortiously interfered with
their business opportunity by claiming that it held an exclusive
license to operate a fiber optics network in Jamaica, creating
the impression among potential investors and the investment bank
handling the sale that the plaintiffs had lied about their own
rights as holders of a Jamaican license.  The plaintiffs assert
a series of tort claims, all stemming from this alleged
misrepresentation by the competing bidder which they allege was
republished among the various defendants.

The plaintiffs' claims include:  (1) interference with
their prospective contractual relations by the alleged competing
bidder Columbus Communications, Ltd.; (2) slander of the
individual plaintiffs by all defendants; (3) slander per se of
the individual plaintiffs by all defendants; (4) libel of the
individual plaintiffs by all defendants; (5) defamation of the
individual plaintiffs by all defendants; (6) "false light"
invasion of the individual plaintiffs' privacy by all
defendants; (7) commercial disparagement of First City by all
defendants; (8) injurious falsehood by all defendants harming
all of the plaintiffs; and (9) civil conspiracy by all
defendants harming all of the plaintiffs.  The plaintiffs allege
damages in the amount of $1.25 billion.  All of the claims are
state common law claims, but this Court has diversity

jurisdiction pursuant to 28 U.S.C. § 1332.  The applicable law
is disputed by the parties, with the plaintiffs favoring
Pennsylvania law while the defendants favor New York law, but
for claims 1-5 and 8 there appears to be no appreciable conflict
between the law of the two states.

The plaintiffs first filed an action based on the facts at
issue in this case in the Eastern District of Pennsylvania on
December 30, 2005.  See Compl., Berwick et al. v. New World
Network Int'l, Ltd., Civ. Action No. 05-6839 (E.D. Pa. 2005).
The plaintiffs then filed an Amended Complaint on February 17,
2006, and the defendants moved to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(6).[1]  On April 4, 2006, before its
deadline to file opposition papers to the defendants' motion had
passed, the plaintiffs filed the present Complaint in this
district.  The plaintiffs then filed their opposition to the
defendants' motion to dismiss the action in the Eastern District
of Pennsylvania on April 6, 2006.  Six days later, on April 12,
2006, the plaintiffs voluntarily dismissed the Pennsylvania
action pursuant to Federal Rule of Civil Procedure 41(a)(1)(i).

On January 26, 2006, a provisional liquidator filed a
petition under Chapter 15 of Title 11 of the U.S. Bankruptcy

---

[1]  Morgan Stanley, a defendant named in the original filing, moved
separately to dismiss.  In connection with the action before this Court, the
parties have jointly stipulated to a dismissal of Morgan Stanley as a party
pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).

Code on behalf of defendant New World Network International, Ltd. ("NWNI") in the bankruptcy court in this district.  United States Bankruptcy Judge Allan L. Gropper entered an Order Granting Recognition and Relief in Aid of Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1517, 1520, and 1521 in the bankruptcy case on October 20, 2006.  Pursuant to 11 U.S.C. §§ 1520(a)(1) and 362, the bankruptcy court's order has the effect of staying "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [title 11], or to recover a claim against the debtor that arose before the commencement of the case under [title 11]."  § 362(a)(1).  The present action is thus **stayed** with respect to the defendant NWNI in light of its bankruptcy proceedings.  The remaining defendants for the purposes of the present motion therefore include NWN USA, Columbus, and Barclays Bank PLC ("Barclays").

The defendants have moved to dismiss the Complaint in the present action pursuant to Rules 8, 9(g), 12(b)(2), and 12(b)(6), and for lack of standing.  For the reasons stated below, the Court **dismisses** the Complaint in its entirety against the moving defendants.

I.

The facts as alleged in the Complaint and the documents to which it refers, which are accepted as true for the purposes of this motion to dismiss, are as follow.

The plaintiff Leonard J. Berwick is a citizen of Pennsylvania and an owner and officer of First City, which is organized under the laws of Nevada but maintains a principal place of business in Philadelphia.  (Compl. ¶¶ 5, 9.)  The plaintiff Jeffery D. Servin, Esq., is a citizen of Pennsylvania doing business at the same address as Berwick in Philadelphia. (Id. ¶ 7.)  First City is in the business of "implementing, installing, distributing and/or marketing fiber-optic cable communications worldwide in nations including, but not limited to, Jamaica and Nigeria."  (Id. ¶ 10.)

At the time the Complaint was filed, the defendant NWN USA was a corporation organized under the laws of Florida with corporate offices in Florida.  (Id. ¶ 15.)  NWN USA was at that time a subsidiary of NWNI,[2] and it had an existing fiber optics ring from Miami connecting to twenty-one entry points in fifteen countries around the Caribbean.  (Id. ¶¶ 15, 35.)  The Complaint does not allege that NWN USA's ring connected Miami to Jamaica.

---

[2]  The Complaint refers to "New World Network, Ltd.," but because the caption and the parties' briefs refer to "New World Network International, Ltd." the Court assumes that the plaintiffs intended to refer to this entity.

The defendant Columbus is a wholly-owned subsidiary of the non-party Columbus Communications, Inc.  Columbus is organized under the laws of Barbados and does business in North Miami Beach, Florida.  (Id. ¶ 17.)

The defendant Barclays is a corporation organized under the laws of the United Kingdom with offices in the City of New York. (Id. ¶ 19.)  At all times relevant to the allegations in the Complaint, Barclays owned a controlling interest in NWN USA, and Barclays attempted to sell the company to a third party.  (Id. ¶¶ 20-21.)  Mark Manski was at the relevant times the Head of the Credit Restructuring & Advisory Group at Barclays and also served as the Director and Chairman of the parent company NWNI. (See id. ¶¶ 22, 58, 60, 89.)

The non-party Morgan Stanley is a corporation organized and registered in Delaware.  Morgan Stanley acted on behalf of Barclays as its agent for the purposes of selling its interest in NWN USA.  (Id. ¶¶ 23-24.)  In particular, James Allen, the Managing Director of the Investment Banking Division at Morgan Stanley, and Richard Swift, also from that division, assisted with the sale of NWN USA.  (See id. ¶¶ 25, 39-40.)

In late 2003, plaintiffs Berwick and Servin, individually and on behalf of First City, began negotiations with William G. Johnson, Foy Johnson, and Mark T. Hynes on behalf of JFOC "to purchase a two-part license granted from the Government of

Jamaica to implement, install, distribute and/or market fiber optic communications in Jamaica and an interest in [JFOC]." (Id. ¶ 30.)  On February 6, 2004, First City acquired fifty percent of JFOC, and along with the acquisition of this interest in JFOC First City acquired the Jamaican license to conduct fiber optics business in Jamaica.  (Id. ¶¶ 31–32.)  The plaintiffs allege that "[t]he resulting venture was to be called First City Fiber Optics."  (Id. ¶ 33.)

JFOC's license grants to the licensee rights to own and operate:

> Cable Landing Stations, Satellite Earth Station including VSATS, International Gateway Switches, Transmission Towers etc.

> such facilities comprising a public network for the provision of specified services to the public to or from:
> (a)   anywhere in Jamaica; and/or
> (b)   anywhere outside Jamaica, provided that such foreign locations have not been proscribed by the government.

(Ex. D to Aff. of Douglas I. Koff, May 5, 2006.)

The day after the plaintiffs formed their business arrangement with JFOC, they learned that NWN USA was for sale by its investor Barclays at an asking price of $150,000,000. (Compl. ¶ 34.)  The plaintiffs informed JFOC of the opportunity to buy NWN USA on February 10, 2004.  (Id. ¶ 36.)  The plaintiffs allege that NWN USA was attractive to them because the cost of laying cable to connect Jamaica to a hub in the

United States would have been approximately $150,000,000.  (Id. ¶ 37.)

On March 3, 2004, Berwick and Servin contacted Richard Swift at Morgan Stanley and expressed their interest in acquiring NWN USA.  (Id. ¶ 39.)  Berwick and Servin thereafter had several communications with James Allen about a potential NWN USA deal.  (See id. ¶¶ 40-44, 49-52, 58.)  In April 2004 Allen sent a letter to the plaintiffs outlining the appropriate procedure for submitting a written application to acquire NWN USA, including a confidentiality agreement for the plaintiffs' execution.  (Id. ¶¶ 42.)  Allen also sent the plaintiffs an Information Memorandum outlining NWN USA's history, sales prospects, and limited financial information.  (Id. ¶ 43.)  The plaintiffs sent Allen a letter on April 27, 2004 expressing continued interest in the deal and requesting additional financial information.  (Id. ¶ 44.)

In November of 2004, the plaintiffs selected "several managers of the highest quality" to manage NWN USA and offered them jobs, which they accepted pending the acquisition of NWN USA.  (Id. ¶ 45.)  The plaintiffs then met with several investment firms to discuss their interest in investing in First City's acquisition.  (See id. ¶¶ 46-49.)  In December 2004, both the Telecommunications Group at Deutsche Bank Securities and a representative of Public Finance Associates expressed interest

in investing, but indicated that they would need a complete set of financials on NWN USA. (Id. ¶¶ 46-48.) The plaintiffs also spoke to a representative of Huff Alternative Fund regarding the deal. (Id. ¶ 49.)

In January and February of 2005, Berwick and Servin sought further financial information about NWN USA from Allen at Morgan Stanley. (Id. ¶ 49-51.) On February 18, 2005, in a telephone conference with the plaintiffs, Allen said that it was his opinion that the plaintiffs were dishonest because they had falsely represented to him that they held a fiber optics license in Jamaica. Allen said that Columbus had issued statements indicating that it held an exclusive fiber optics license in Jamaica. (Id. ¶ 52.)

The plaintiffs allege that they were in "constant communication" with the owners of JFOC in Jamaica through their attorney, Earle Watson, Sr., regarding the "joint enterprise Jamaica Fibre Optic Cable Company Limited/First City Fiber Optics." (Id. ¶ 54.) On February 22, 2005, Watson sent the plaintiffs an email stating that their licenses for fiber optics business in Jamaica were valid, that "a few" additional licenses for similar purposes had been issued up to that date, and that Columbus did not hold "an exclusive license to implement, install, distribute and/or market fiber-optic communications in Jamaica." (Id. ¶ 55.)

On February 23, 2005, one of the managers the plaintiffs hired to run NWN USA after their acquisition resigned his position because he "had lost faith in [the] Plaintiffs' integrity as a result of Columbus Communications' alleged exclusive license."  (Id. ¶ 56.)

In April and May of 2005, the plaintiffs corresponded with Mark Manski at Barclays.  The plaintiffs submitted an Acquisition Proposal, and in response Manski pointed out certain deficiencies in their proposal.  (Id. ¶¶ 58, 60.)  In a letter dated May 11, 2005, and written in his capacity as Chairman of NWNI, Manski stated that the plaintiffs' proposal was unacceptable for at least three reasons:  (1) the economics proposed were inferior to the terms of Columbus's proposal; (2) the plaintiffs' financing mechanism was subject to risk and unlikely to close; and (3) the plaintiffs' proposal included no commitment from the financing source.  (Ex. A to Koff Aff.)

At a meeting with the plaintiffs on May 12, 2005, Manski indicated that he believed the plaintiffs to be dishonest, saying, "You gentlemen don't own anything in Jamaica."  (Compl. ¶¶ 63-64.)  Manski showed the plaintiffs a press release posted on NWN USA's website containing the statement:  "Columbus-controlled FibraLink Jamaica Ltd., was recently awarded the exclusive license to build and operate a submarine fibre optic cable network connecting Jamaica to the United States."  (Id.

10

¶¶ 57, 65.)  The plaintiffs allege that NWN USA posted the statement on its website on April 4, 2005.  (Id. ¶ 57.)

The FibraLink license to which the press release referred grants the licensee, among other things, the right to own, construct, and operate "[a] submarine fibre-optic cable system named Fibralink Cable System linking Jamaica with the United States."  (Ex. E to Koff Aff.)

After the meeting with Manski in May, the plaintiffs again asked Watson about the status of their Jamaican fiber optics licenses, and Watson replied that the statements made by Columbus and NWN USA regarding Columbus's exclusive license were "categorically false."  (Compl. ¶¶ 68, 71.)

Manski sent a confidentiality agreement to the plaintiffs, which they signed and returned, and Manski then sent NWN USA's audited financial statement to the plaintiffs.  (Id. ¶¶ 69–70.) On May 19, 2005, the plaintiffs sent to Manski and to David Martin, the President of NWN USA, a letter enclosing "proof of the existence of and status of [the] Plaintiffs' licenses." (Id. ¶ 72; Ex. B to Koff Aff.)  The letter included a signed sale of shares agreement between First City and Messrs. Johnson and Hynes of JFOC.  (Ex. B to Koff Aff.)

A letter from Manski to the plaintiffs dated May 23, 2005 states that their letter of May 19 failed to address the deficiencies Manski had laid out in his May 11 letter.  It also

states that whether the plaintiffs or Columbus had a valid telecom license in Jamaica "is irrelevant to [NWN USA]" and that "it is plainly wrong to suggest that any dialogue has taken place between Columbus and [NWN USA] regarding the status of any license rights you might hold in the region." (Ex. C to Koff Aff.)

In support of their proposal to acquire NWN USA, the plaintiffs met with various potential investors. On May 5, 2005, the plaintiffs received a Letter of Intent from Public Finance Associates to fund the acquisition of NWN USA for $140,000,000. (Compl. ¶ 59.)

On June 17, 2005, the plaintiffs met with senior managers at Lenfest Media Group to secure an equity partner. (Id. ¶ 74.) A Lenfest representative asked the plaintiffs to compose a draft of a Letter of Intent to be submitted, after approval by Lenfest's counsel, to Barclays and to the Board of NWN USA. (Id. ¶ 76.) When the plaintiffs later met that representative in person, he raised an issue about their credibility regarding their Jamaica licenses in light of Columbus's claim to an exclusive license. After the plaintiffs submitted a draft Letter of Intent to Lenfest, they received a letter from the Lenfest representative backing out of the deal, citing "material inaccuracies" and a lack of faith in the plaintiffs' credibility. (Id. ¶¶ 77–81.)

In July and August of 2005, the plaintiffs negotiated with other potential equity partners, including Comcast and Ryan Beck & Associates. (Id. ¶ 82.)

On August 17, 2005, while still engaged in negotiations with potential investors, the plaintiffs learned that a deal had been "consummated" between Columbus and NWN USA. (Id. ¶ 83.) Documents the plaintiffs obtained as a result of the parent company NWNI's bankruptcy proceedings show that Columbus obtained NWN USA for $100,000 cash at closing and a Deferred Purchase Price Ownership Certificate to begin payment in 2008. The Certificate is worth approximately $34,000,000. (Id. ¶ 87.)

The plaintiffs "believe and therefore aver that" Columbus was at all relevant times aware of the prospective business relationship between the plaintiffs and Barclays and NWN USA. (Id. ¶ 96.) The plaintiffs also "believe and therefore aver that" Columbus published false statements regarding its alleged exclusive licenses relating to a fiber optics link to Jamaica with the intent to prevent the plaintiffs from completing their deal to acquire NWN USA. (Id. ¶ 97.) They also allege that other defendants repeated these false statements with knowledge that they were false. (Id. ¶ 108.)

The plaintiffs allege that the replacement value for the "significant corporate assets" they would have obtained if they had been able to acquire NWN USA is in excess of $1 billion, and

that they would have realized profits in excess of $250 million from a client base if the deal had been consummated.  (Id. ¶¶ 99-100.)  The plaintiffs also allege damages to their personal, business, and professional reputations totaling at least $1.25 billion.

The Complaint contains various other allegations that are stated in terms of legal conclusions, and which are accordingly referenced where relevant in the discussion below.

## II.

### A.

As an initial matter, the parties' disagreement over the choice of law must be addressed.  The defendants argue that New York law should be applied, while the plaintiffs seek to apply Pennsylvania law based on their residential and business addresses in Pennsylvania.

In a diversity action where the laws of more than one state could conceivably apply to the plaintiffs' claims, the choice of law rules of the forum state govern.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 582 (2d Cir. 2006).  Where there is no conflict between the law of New York and another jurisdiction, the court may dispense with the choice-of-law analysis and apply New York law.  See,

e.g., Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) (citing

J. Aron & Co. v. Chown, 647 N.Y.S.2d 8, 8 (App. Div. 1996)).

The plaintiffs' claims for tortious interference with

prospective contractual relations, slander, slander per se,

libel, defamation, and injurious falsehood are recognized by

both New York and Pennsylvania, and the plaintiffs admit that

the elements of each claim are similar or identical in the two

states.  The plaintiffs make no substantive arguments why they

would be prejudiced by applying New York law to these claims at

the motion to dismiss stage.  The Court therefore applies New

York law with respect to these claims.

For the three remaining claims—"false light" invasion of

privacy, commercial disparagement, and civil conspiracy—the

substantive law of New York and Pennsylvania differs.  New York

does not recognize as a tort "false light" invasion of privacy,

Pedraglio Loli v. Citibank, Inc., No. 97 Civ. 2179, 1997 WL

778750, at *5 (S.D.N.Y. Dec. 18, 1997), aff'd 173 F.3d 845 (2d

Cir. 1999); Howell v. New York Post Co., 612 N.E.2d 699, 703

(N.Y. 1993), and no New York court has upheld a claim of

commercial disparagement, e.g. John Grace & Co. v. Todd Assocs.,

Inc., 591 N.Y.S.2d 477, 478 (App. Div. 1992) (dismissing a

commercial disparagement claim along with a defamation claim

with no discussion of the elements of commercial disparagement).

New York also does not recognize civil conspiracy as an

independent tort; such a claim "stands or falls with the underlying tort." Ward v. City of New York, 789 N.Y.S.2d 539, 541 (App. Div. 2005); see also Kwan v. Schlein, 441 F. Supp. 2d 491, 506 (S.D.N.Y. 2006).

On the contrary, Pennsylvania recognizes "false light" invasion of privacy, see Larsen v. Phila. Newspapers, Inc., 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988), and commercial disparagement, see Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 246 (Pa. 2002), and Pennsylvania takes a more permissive stance towards civil conspiracy claims, see, e.g., Savitsky v. Mazzella, No. 98 Civ. 9051, 2004 WL 2454120, at *3 n.3 (S.D.N.Y. Nov. 1, 2004) (noting that Pennsylvania, unlike New York, does not require "express agreement between the parties" as an element of a civil conspiracy claim). The Court therefore must apply New York's choice-of-law rules to determine the applicable law against which to judge the plaintiffs' pleading with respect to these claims.

In determining the applicable law for tort claims, "New York applies the law of the state with the most significant interest in the litigation." Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999); Padula v. Lilarn Props. Corp., 644

N.E.2d 1001, 1002 (N.Y. 1994).[3]  In weighing the interests of the jurisdictions, New York distinguishes between "conduct regulating" and "loss allocating" rules.  Lee, 166 F.3d at 545; Schultz v. Boy Scouts of America, Inc., 480 N.E.2d 679, 684-85 (N.Y. 1985); see also Neumeier v. Kuehner, 286 N.E.2d 454, 457-58 (N.Y. 1972).  Where the rule at issue is primarily conduct regulating, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  Padula, 644 N.E.2d at 1002 (quoting Cooney v. Osgood Mach., 612 N.E.2d 277, 280 (N.Y. 1993)).

The issues of whether a state recognizes the torts at issue (and what the elements of such torts are) where New York and Pennsylvania law conflict are rules that New York courts treat as conduct-regulating rather than loss-allocating, so the law of the jurisdiction where the alleged torts occurred should apply.  Cf. Lee, 166 F.3d at 545.  For example, allowing a cause of action for false light or commercial disparagement will discourage such conduct while declining to make such conduct actionable will give greater deference to free expression.

---

[3]  The New York Court of Appeals has clarified the difference between this "interest analysis" for tort cases and the "center or gravity" or "grouping of contacts" analysis that applies in contract cases.  See Allstate Ins. Co. v. Stolarz, 613 N.E.2d 936, 938-39 (N.Y. 1993).

In cases involving allegations of defamation, New York
courts usually find that the state of the plaintiffs' domicile
has the most significant relationship to the case, "assuming
that the defamation was published in the plaintiff's state,
because plaintiff's home state is where a plaintiff's reputation
is most likely to be damaged." La Luna Enters. v. CBS Corp., 74
F. Supp. 2d 384, 388 (S.D.N.Y. 1999).  However, this preference
is "not conclusive." Lee, 166 F.3d at 545.

In this case there is no specific allegation that tortious
statements were published in the plaintiffs' home state of
Pennsylvania, other than the allegation that the Columbus press
release was published on the Internet.  Many of the entities and
individuals alleged to have published or republished tortious
statements, including the defendant Barclays and the non-party
Morgan Stanley, are located in New York.  While the plaintiffs
make conclusory allegations that their reputations were harmed
in their home state, the Complaint does not identify any person
or entity in Pennsylvania who heard or read disparaging remarks
about the plaintiffs or their business.  The plaintiffs'
relevant business dealings were in New York, where they pursued
their effort to acquire NWN USA by meeting with Morgan Stanley,
Barclays, and other entitites.  The plaintiffs therefore have
not shown how either the alleged tortious conduct or the
detrimental effects of that conduct took place in Pennsylvania.

Rather, the main import of the harm allegedly suffered in this case from the alleged torts of false light, commercial disparagement, and civil conspiracy is the harm to the plaintiffs' reputations with Morgan Stanley and Barclays in New York.  See, e.g., Grass v. News Group Pubs., Inc., 570 F. Supp. 178, 185-86 (S.D.N.Y. 1983).  New York, and not Pennsylvania, is therefore the state where the alleged torts occurred.  See Padula, 644 N.E.2d at 1002.  Because the plaintiffs have failed to allege any meaningful connection between the alleged torts and Pennsylvania aside from their personal residence there, and because the plaintiffs' allegations include acts within New York and of the type which New York has a strong interest in regulating, the Court will apply New York law to the remaining three claims as well.[4]

**B.**

The defendants assert that the plaintiffs lack standing to bring this action because the only alleged tortious statements reflected on the validity of JFOC's license to conduct fiber

---

[4]  The parties rely in part in their briefing on a multi-factored test that some district courts have applied to examine various contacts with the states at issue in cases involving multi-state libel.  See, e.g. Davis v. Costa-Gravas, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984).  However, this case is not akin to the cases involving multi-state publications of books or periodicals where this test has been applied, and furthermore the test has not been endorsed by the Court of Appeals for the Second Circuit.  Lee, 166 F.3d 545-46; La Luna, 74 F. Supp. 2d at 389 n.3.  The Court therefore applies the usual New York "interests" analysis rather than this multi-factored contacts test.

optics business in Jamaica, not on the individual plaintiffs or
First City, and thus JFOC is the only entity that was harmed.

Under New York law, a shareholder in a corporation does not
have standing to bring suit individually on behalf of the
corporation, except in cases where the alleged wrongdoer owes an
independent duty to the shareholder.  See, e.g., Abrams v.
Donati, 489 N.E.2d 751, 751-52 (N.Y. 1985).  Similarly, "a
partnership cause of action belongs only to the partnership
itself or to the partners jointly."  Shea v. Hambro America
Inc., 606 N.Y.S.2d 198, 199 (App. Div. 1994).

The plaintiffs claim to "equitably own" shares in JFOC
(Compl. ¶¶ 6, 8), though they equivocate on the nature of this
interest, at times using language implying a shareholder
interest in a corporation (e.g., id. ¶¶ 31-32) or a joint
venture (e.g., id. ¶ 54), but then describing the venture as a
partnership in their Reply Brief and at argument (see Reply Br.
17-18).  The plaintiffs similarly obscure who held rights under
the JFOC licenses, stating that "during all relevant times,
Plaintiffs and/or Jamaica Fibre Optic Cable Company Limited
owned licenses to implement, install, distribute and/or market
fiber-optic communications in Jamaica."  (Compl. ¶ 53.)  This
use of "and/or" is impermissibly indefinite to allege that the
named plaintiffs, rather than the non-party JFOC, held a fiber-
optics license.

20

Whatever the nature of the plaintiffs' interest in JFOC, the harm the plaintiffs allege they suffered stems from their failure to consummate a deal to acquire NWN USA because of misrepresentations about their rights under the JFOC license. These alleged misrepresentations could only affect the entity that actually held rights to the JFOC license.  It is therefore apparent that the alleged "joint enterprise" between the plaintiffs and JFOC—or JFOC itself if it was held as a partnership—was the only entity with standing to bring this suit, though it was never named as a plaintiff.  Regardless of whether this "enterprise" was a corporation or a partnership, none of the named plaintiffs has individual standing to bring suit on its behalf under New York law.  Abrams, 489 N.E.2d 751-52; Shea, 606 N.Y.S.2d 199.

While the named plaintiffs' lack of standing itself requires dismissal of their current Complaint, the Court finds additional reasons to dismiss the Complaint, as discussed below.


### C.

The defendant Columbus moves to dismiss the claims against it for lack of personal jurisdiction pursuant to Rule 12(b)(2).

A district court has "broad discretion" in deciding a motion to dismiss pursuant to Rule 12(b)(2), including the discretion to conduct an evidentiary hearing if the Court

believes one is warranted.  See CutCo Indus. v. Naughton, 806
F.2d 361, 364 (2d Cir. 1986); see also Clarendon Nat'l Ins. Co.
v. Lan, 152 F. Supp. 2d 506, 515 (S.D.N.Y. 2001).  To survive a
motion to dismiss where no evidentiary hearing is held, the
plaintiff need only make a prima facie case that the defendant
is subject to the Court's personal jurisdiction.  See In re
Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir.
2003) ("Prior to discovery, a plaintiff may defeat a motion to
dismiss based on legally sufficient allegations of
jurisdiction."); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105,
1108 (2d Cir. 1997); Rubinbaum LLP v. Related Corporate Partners
V, L.P., 154 F. Supp. 2d 481, 486 (S.D.N.Y. 2001).  However, the
Court may rely on matters outside the pleadings, and "where
[the] defendant rebuts [the] plaintiffs' unsupported allegations
with direct, highly specific, testimonial evidence regarding a
fact essential to jurisdiction—and the plaintiffs do not counter
that evidence—the allegation may be deemed refuted." GCG Int'l,
Inc. v. Eberhardt, 05 Civ. 2422, 2005 WL 2647942, at *2
(S.D.N.Y. Oct. 17, 2005) (internal quotation marks omitted); see
also Bensusan Rest Corp. v. King, 937 F. Supp. 295, 298
(S.D.N.Y. 1996), aff'd, 126 F.3d 25 (2d Cir. 1997).

The Court must construe the pleadings and supporting
affidavits in the light most favorable to the plaintiff.  See
CutCo Indus., 806 F.2d at 365; Bensusan, 937 F. Supp. at 298.

The plaintiff eventually will have to establish jurisdiction by a preponderance of the evidence, either at trial or at a pre-trial evidentiary hearing.  See CutCo Indus., 806 F.2d at 365; Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981).  But at this stage, prior to discovery, the Court must "credit a plaintiff's averments of jurisdictional facts as true."  In re Magnetic Audiotape, 334 F.3d at 206.

A district court sitting in diversity must apply the forum state's law in determining whether it has personal jurisdiction over a defendant.  See CutCo Indus., 806 F.2d at 365; Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc); Clarendon, 152 F. Supp. 2d at 515.  The Court must determine whether the forum state's law allows the exercise of personal jurisdiction and, if so, whether doing so comports with constitutional due process guarantees.  See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Clarendon, 152 F. Supp. 2d at 515; see also Landau v. New Horizon, 02 Civ. 6802, 2003 WL 22097989, at *3 (S.D.N.Y. Sept. 8, 2003).

Columbus is a wholly-owned subsidiary of the non-party Columbus Communications Inc.  (Compl. ¶ 17; Aff. of Brendan J. Paddick ¶ 3, May 3, 2006.)  It appears that the plaintiffs might have named the wrong party because the Complaint refers to the defendant Columbus as a Barbados corporation with offices in North Miami Beach, Florida (Compl. ¶ 17), while the CEO of

Columbus avers in a sworn affidavit that it is a Bahamas corporation and that its parent corporation, non-party Columbus Communications Inc., is a Barbados corporation (Paddick Aff. ¶ 3.).[5]  The plaintiffs have not moved to correct the named party, however, as provided for under the Federal Rules, see Fed. R. Civ. P. 15(c), and therefore the Court will consider the motion with respect to the named party in light of the unrebutted affidavit submitted by its CEO.  (See Paddick Aff.)

New York provides for both general and specific personal jurisdiction.  N.Y. C.P.L.R. §§ 301, 302(a).  The plaintiffs concede that the Court does not have general jurisdiction over Columbus, but they assert that Columbus is subject to specific jurisdiction pursuant to C.P.L.R. § 302(a)(1), the state's long-arm statute, which authorizes jurisdiction where the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state."  C.P.L.R. § 302(a)(1).  To implicate this jurisdictional basis, the cause of action must arise from the defendant's specific business transactions in New York.  See C.P.L.R. § 302(a).[6]

Columbus argues that it did not engage in any acts in New York that gave rise to any of the plaintiffs' causes of action.

---

[5]  The defendant Columbus only asserts its personal jurisdiction argument with respect to itself and not its parent corporation.

[6]  The plaintiffs have not attempted to rely on any other basis for specific long-arm jurisdiction in New York such as the commission of a tortious act within the state, perhaps because there is a specific exception for a cause of action for defamation.  See N.Y.C.P.L.R. § 302(a)(2).

The Paddick Affidavit represents that the named defendant Columbus did not "interact with" NWN USA or Barclays in New York or "negotiate to purchase or actually purchase NWN USA." (Id. ¶ 4.)  It further represents that Columbus is not registered to do business in New York, that it neither owns nor rents property in New York, and that it has no agents or employees in New York and receives no revenues from New York.  (Id. ¶¶ 5-8, 12-13.)

The plaintiffs do not deny the facts asserted in the Columbus CEO's affidavit, but they argue that the affidavit does not deny interactions between Columbus and non-party Morgan Stanley in New York, and that phone calls, letters, email, or other correspondence between Morgan Stanley and Columbus would constitute business transactions giving rise to jurisdiction under C.P.L.R. § 302(a)(1).  However, the plaintiffs have not rebutted the Paddick Affidavit by pointing to any business contacts between the named defendant Columbus and Morgan Stanley, Barclays, or any other New York entity, but instead appear to rest their argument upon a mere supposition that such contacts might have existed.  Furthermore, the plaintiffs have not requested an evidentiary hearing on this issue.  The plaintiffs therefore have not made a prima facie case of personal jurisdiction over Columbus.

The claims relating to Columbus's conduct are **dismissed** with respect to that defendant for lack of personal jurisdiction.[7]

### III.

### A.

On a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are accepted as true.  Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998).  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiffs' favor.  Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  Therefore, the defendants' present motion should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514 (2002) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73

---

[7]  The remaining flaws in the pleadings with respect to Columbus, discussed below, would apply even if this lack of personal jurisdiction is the result of the plaintiffs simply naming the wrong party.

(1984)); <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Grandon</u>, 147 F.3d at 188; <u>Goldman</u>, 754 F.2d at 1065.

While the Court should construe the factual allegations in the light most favorable to the plaintiff, the Court is not required to accept legal conclusions asserted in the Complaint. <u>See</u> <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002); <u>Barile v. City of Hartford</u>, 386 F. Supp. 2d 53, 54 (D. Conn. 2005).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken.  <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>see also</u> <u>Taylor v. Vermont Dep't of Educ.</u>, 313 F.3d 768, 776 (2d Cir. 2002); <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991); <u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993); <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47-48 (2d Cir. 1991); <u>VTech Holdings Ltd. v. Lucent Techs., Inc.</u>, 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001).

**B.**

The defendants argue that the plaintiffs' claims for slander, slander per se, libel, and defamation should all be dismissed for a variety of reasons.

**1.**

While the federal pleading standard set out in Federal Rule of Civil Procedure 8 is not as strict as New York's in haec verba pleading requirement for defamation claims, see N.Y.C.P.L.R. § 3016(a); Sterling Interiors Gp., Inc. v. Haworth, Inc., 94 Civ. 9216, 1996 WL 426379, at *23-24 (S.D.N.Y. July 30, 1996), federal courts do require that the alleged defamatory statements be pleaded with sufficient specificity to put the defendants on notice.  E.g., Geisler v. Petrocelli, 616 F.2d 636, 640 (2d Cir. 1980); see also Asay v. Hallmark Cards, Inc., 594 F.2d 692, 698-99 (8th Cir. 1979).

Central to the plaintiffs' libel and slander claims is their allegation that NWN USA posted on its Internet website a press release which contained the following allegedly false statement:  "Columbus-controlled FibraLink Jamaica Ltd., was recently awarded the exclusive license to build and operate a submarine fibre optic cable network connecting Jamaica to the United States."  (Compl. ¶ 57.)  The plaintiffs theorize that this statement suggests that Columbus defamed them by claiming to hold exclusive rights under a Jamaican fiber optics license

28

when the plaintiffs also claimed to hold rights under a Jamaican
fiber optics license, thereby suggesting that the plaintiffs
were dishonest in their business dealings.  The Complaint
contains various other allegations relating to the republication
of statements about the exclusivity of Columbus's license, but
none of those statements is set out specifically.

Furthermore, the Complaint makes repeated use of
hypothetical language which is too indefinite to support the
allegations of republication by some of the defendants.  For
example, in support of their slander claim, the plaintiffs
allege that "[t]o the extent that any defamatory statements
issued by Columbus Communications were made" to interested
parties at Barclays Bank or Morgan Stanley, or to the Board of
NWN USA, those statements were repeated to various people.
(Compl. ¶¶ 103-05.)  The plaintiffs use the same qualifier, "to
the extent that," in the allegations comprising their slander
per se and libel claims.  (Id. ¶¶ 113-15, 124-26.)  All of these
allegations use hypothetical language and thus fail to put the
defendants adequately on notice of what defamatory statements
they are alleged to have made.  Cf. Safety Nat'l Cas. Corp. v.
Dominick's Finer Foods, Inc., No. 03 C 7477, 2003 WL 22872114,
at *1 (N.D. Ill. Dec. 2, 2003) (striking answer and counterclaim
using "to the extent" language as inadequate under Rule 8(b));
Robert v. Buck Consultants, Inc., No. 97 C 7352, 1997 WL 754014,

29

at *1 (N.D. Ill. Nov. 19, 1997) (striking affirmative defenses using "to the extent" language as impermissibly hypothetical). Similarly, the plaintiffs' use of the mixed conjunction "and/or" in several places fails to identify the entity they are talking about with sufficient definiteness.  (See Compl. ¶¶ 102, 10406, 112-16, 123-28.)

When these indefinite pleadings are stripped away, the only statement that remains as an alleged basis for the defamation claims is the above-quoted assertion that a Columbus-controlled entity held an "exclusive license to build and operate a submarine fiber optic cable network connecting Jamaica to the United States."  However, this statement itself cannot form the basis for a defamation claim for the following reasons.

**2.**

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander."  Idema v. Wagner, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000), aff'd, 29 Fed. Appx. 676 (2d Cir.2002).  Under New York law, the plaintiffs must plead the following elements to maintain a claim for defamation under either a libel or a slander theory:  "(1) a false and defamatory statement of and concerning the plaintiff[s]; (2) publication by defendant[s] of such a statement to a third party; (3) fault on the part of the defendant; and (4) injury to [the] plaintiff[s]."  Id.; see also

30

Weinstein v. Friedman, No. 94 Civ. 6803, 1996 WL 137313, at *10 (S.D.N.Y. Mar. 26, 1996).

At the motion to dismiss stage, the Court must determine as a matter of law whether the statements at issue are susceptible to a defamatory meaning.  Tracy v. Newsday, Inc., 155 N.E.2d 853, 854 (N.Y. 1959); see also Van Buskirk v. New York Times Co., 325 F.3d 87, 90 (2d Cir. 2003).  "A defamatory meaning is one that 'exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society.'"  Van Buskirk, 325 F.3d at 90 (quoting Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 178 (2d Cir. 2000)).  To judge whether certain words are susceptible to a defamatory meaning, the Court must construe them "in the context of the entire statement or publication as a whole, tested against the understanding of the average reader," and without placing a "strained or artificial construction" on them.  Aronson v. Wiersma, 483 N.E.2d 1138, 1139 (N.Y. 1985); see also Weinstein, 1996 WL 137313 at *11.

Because the plaintiffs plead that the alleged defamatory statements related to the plaintiffs "impliedly or otherwise through innuendos" (Compl. ¶¶ 102, 112, 123), they allege that

the statements are defamatory by innuendo rather than on their face.[8]  See Seymour v. Lakeville Journal Co., LLC, 04 Civ. 4532, 2004 WL 2848537, at *4 (S.D.N.Y. Dec. 9, 2004); Idema, 120 F. Supp. 2d at 368 (discussing libel per quod); Cole Fischer Rogow, Inc. v. Carl Ally, Inc., 288 N.Y.S.2d 556, 562 (App. Div. 1968). Such claims require the plaintiffs to show "that the language is capable of communicating a defamatory idea when certain extrinsic facts are known or when the words are given a meaning not ordinarily attributed to them."  Cole Fischer Rogow, 288 N.Y.S.2d at 562 (internal quotation marks omitted). Furthermore, "[a]n innuendo cannot alter or enlarge the plain and obvious meaning of the words so as to convey a meaning that is not otherwise expressed."  Seymour, 2004 WL 2848537 at *4 (citing Tracy, 155 N.E. at 855).  Where the pleading relies on an innuendo, special damages must be pleaded.  Idema, 120 F. Supp. 2d at 368; Oliveira v. Frito-Lay, Inc., 96 Civ. 9289, 1997 WL 324042, at *8 (S.D.N.Y. June 13, 1997).

The alleged statement published on NWN USA's website only relates to rights held by Columbus and does not mention the plaintiffs at all.  As the defendants point out, the statement relates to an exclusive license to build a fiber optics network

---

[8]  The plaintiffs' slander per se claim is incompatible with allegations of defamation by innuendo.  See Kirkland v. City of Peekskill, 634 F. Supp. 950, 953 (S.D.N.Y. 1986); Aronson, 483 N.E.2d at 1140.  Because the plaintiffs have not alleged any facially defamatory statements, the slander per se claim must be dismissed.

"connecting Jamaica to the United States," while the JFOC license under which the plaintiffs claim their rights provides for the operation of facilities "in Jamaica."[9]  (Ex. D to Koff Aff.)  It is unnecessary to parse the two Jamaican licenses comprehensively to see that they provide different rights.

The plaintiffs' attempt to claim by innuendo that the stated "exclusivity" of Columbus's license defamed them is insufficient.  To read the statement as reflecting upon the plaintiffs at all, the audience would need to be aware of the plaintiffs' assertion that they held rights to JFOC's Jamaican license, and that the two licenses granted the same rights (which is not borne out by a reading of the two licenses).  Even assuming an audience that was aware of the plaintiffs' assertions that they had rights under JFOC's Jamaican license, it would require too great a leap to suggest that Columbus's claim about its own rights defamed the plaintiffs.  The alleged statement about Columbus's exclusive license "to build and operate a submarine fibre optic cable network connecting Jamaica to the United States" thus is not susceptible to a defamatory

---

[9]  The JFOC license also allows the operation of certain facilities "outside Jamaica" provided that the government has not otherwise restricted those other locations.  The JFOC license differs from the alleged Columbus license in that it does not mention "connecting Jamaica to the United States."

meaning against the plaintiffs as a matter of law, even by innuendo.[10]

Finally, the plaintiffs have not met the requirement of pleading special damages. See Idema, 120 F. Supp. 2d at 368. "Special damages" means harm of a pecuniary or economic kind, not mere reputational harm. Wadsworth v. Beaudet, 701 N.Y.S.2d 145, 147 (App. Div. 1999); see also Korry v. Int'l Tel. & Tel. Co., 444 F. Supp. 193, 197 (S.D.N.Y. 1978). The Complaint only alleges damage to the plaintiffs' "personal, business and professional reputations" as a result of the alleged defamation, although it demands the sum of $1.25 billion in damages. Neither this round figure, nor the allegation of lost profits associated with the plaintiffs' tortious interference claim, is sufficient to plead special damages. See Dooner v. Keefe, Bruyette & Woods, Inc., 00 Civ. 572, 2003 WL 135706, at *5 (S.D.N.Y. Jan. 17, 2003); Korry, 444 F. Supp. at 197.

For all of these reasons, the slander, slander per se, libel, and defamation claims are **dismissed**.

---

[10]   Furthermore, because the alleged statement does not mention the plaintiffs at all, the pleadings also fail to meet the independent requirement that a statement must be "of and concerning the plaintiff[s]" to support a defamation claim. E.g., Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006). This requirement "stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them." Id. at 399-400. While the reference to the plaintiffs "may be indirect and may be shown by extrinsic facts," the burden on the plaintiffs "is not a light one." Chicherchia v. Cleary, 616 N.Y.S.2d 647, 648 (App. Div. 1994).

**C.**

The plaintiffs claim that Columbus tortiously interfered with their prospective contractual relations by issuing false statements about the exclusivity of its Jamaican license and thereby preventing the plaintiffs from consummating an acquisition deal with Barclays and NWN USA.  (Compl. ¶¶ 90-100.)

To state a claim for tortious interference with prospective contractual relations,[11] the plaintiffs must allege:  (1) that they had a business relationship with a third party; (2) that the defendants knew of that relationship and intentionally interfered with it; (3) that the defendants either acted solely out of malice or used wrongful means; and (4) that the defendants' interference caused injury to the relationship with the third party.  Zikakis v. Staubach Retail Servs., Inc., 04 Civ. 9609, 2005 WL 2347852, at *4 (S.D.N.Y. Sept. 26, 2005); see also Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003).  "[The] plaintiff[s] also must allege that [they] 'would have entered into an economic relationship but for the defendant's wrongful conduct.'"  Zikakis, 2005 WL 2347852 at *4 (quoting Knight-McConnell v. Cummins, 03 Civ. 5035, 2004 WL 1713824, at *4 (S.D.N.Y. July 29, 2004)).  For the purposes of the third

---

[11]  This tort is also referred to as tortious interference with prospective business relations or prospective economic advantage, among other names, but the legal standard is the same regardless of the nomenclature. See, e.g., Henneberry v. Sumitomo Corp., 415 F. Supp. 2d 423, 465 n.23 (S.D.N.Y. 2006).

element, wrongful means must as a general rule amount to "a crime or an independent tort" unless the defendant has "the sole purpose of inflicting intentional harm on [the] plaintiffs." Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1103 (N.Y. 2004).

Columbus moves to dismiss on the grounds that the plaintiffs have not alleged that it acted solely out of malice or by wrongful means and that the plaintiffs have not adequately alleged but-for causation.

Because the Complaint alleges that Columbus actually acquired NWN USA, the plaintiffs themselves admit that Columbus was in competition with them to acquire NWN USA.  Columbus therefore could not have acted solely out of malice, or with the "sole purpose of inflicting intentional harm on [the] plaintiffs."  Id.; cf. Four Finger Art Factory, Inc. v. Dinicola, 99 Civ. 1259, 2001 WL 21248, at *9 (S.D.N.Y. Jan. 9, 2001).  The only specific act alleged in the Complaint that could support the claim against Columbus was it publication of allegedly false statements regarding the exclusivity of its Jamaican fiber optics license.  (See Compl. ¶¶ 95, 97.)  The Court has already found that this conduct could not have constituted defamation, and it similarly does not constitute the kind of "wrongful means" that can form the basis for a tortious interference claim against a competitor.  See Treppel v. Biovail Corp., 03 Civ. 3002, 2005 WL 427538, at *8 (S.D.N.Y. Feb. 22,

2005) (dismissing tortious interference claim where no statements by the defendants "could sustain a claim for defamation or any other tort"); see also Carvel, 350 F.3d at 19; Carvel, 818 N.E.2d at 1103.

Moreover, the Complaint does not contain sufficient factual allegations to support the requirement of pleading "but-for" causation.  See Zikakis, 2005 WL 2347852, at *5.  In fact, the Complaint shows that the plaintiffs were never able to procure the financing required to acquire NWN USA, and their talks with Barclays plainly never reached the stage at which one could say they were likely to consummate a deal.  While the plaintiffs assert that their failings to achieve financial support were the result of distrust caused by Columbus's allegedly false claims of exclusive rights, the Complaint in fact shows that plaintiffs' efforts to acquire NWN USA were too nascent at the time of the alleged statements by Columbus to suggest that the plaintiffs would have acquired NWN USA but for Columbus's conduct.

For these reasons, the tortious interference with prospective contractual relations claim is **dismissed**.

**D.**

The plaintiffs also assert a claim for injurious falsehood[12] against all defendants on the basis of their alleged "false[,] misleading and defamatory statements."  (Compl. ¶ 147.)  Under New York law, to plead a claim for injurious falsehood the plaintiffs must allege four elements:  "(1) the falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages."  Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 75 F. Supp. 2d 235, 239 (S.D.N.Y. 1999) (stating elements of "product disparagement"), aff'd, 314 F.3d 48 (2d Cir. 2002); see also Ruder & Finn Inc. v. Seaboard Sur. Co., 422 N.E.2d 518, 522 (N.Y. 1981).  The cause of action differs from defamation in that a defamatory statement "impugns the basic integrity or creditworthiness of a business" while an injurious falsehood "is confined to denigrating the quality of the [plaintiff's] business'[s] goods or services." Henneberry, 415 F. Supp. 2d at 470 (internal quotation marks and citations omitted) (quoting Ruder & Finn, 422 N.E.2d at 522); see also Cunningham v. Hagedorn, 422 N.Y.S.2d 70, 74 (App. Div. 1979) ("[The statements] do not concern themselves with plaintiff's property.  Hence, they may not be the subject of an action for injurious falsehood.").

---

[12] Injurious falsehood is alternatively referred to as "trade libel" or "product disparagement."  Henneberry, 415 F. Supp. 2d at 470 & n.24.

The alleged false statements, even given the import the plaintiffs ascribe to them, do not relate to any "goods or services" that the plaintiffs owned, and they therefore cannot support an injurious falsehood claim.  See Henneberry, 415 F. Supp. 2d at 472; Ruder & Finn, 422 N.E.2d at 522.  Furthermore, as discussed above in reference to the defamation claims, the plaintiffs have not met the requirement of pleading special damages.  Cf. Fashion Boutique, 75 F. Supp. 2d at 239-41.

For all of these reasons, the injurious falsehood claim is **dismissed.**


                                    **E.**

As explained in the choice-of-law discussion above, New York does not recognize the "false light" invasion of privacy tort, and the plaintiffs cannot point to any New York case that has upheld a commercial disparagement claim.  New York also does not recognize civil conspiracy as an independent tort, see Ward, 789 N.Y.S.2d at 541, and all of the other tort claims that could potentially underlie the civil conspiracy claim are dismissed. Therefore, under New York law, the false light, commercial disparagement, and civil conspiracy claims cannot survive.

Even if the Court were to apply Pennsylvania law, these claims would also be dismissed.

In Pennsylvania, the tort of "false light" invasion of privacy involves "publicity that unreasonably places the [plaintiffs] in a false light before the public." Strickland v. Univ. of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997) (quoting Curran v. Children's Serv. Ctr. of Wyoming County, Inc., 578 A.2d 8, 12 (Pa. Super. Ct. 1990)).  The Pennsylvania Superior Court has adopted the Restatement (Second) of Torts' explanation of the elements of the offense, which are that: "(a) the false light in which the [plaintiffs were] placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiffs] would be placed." Larsen v. Phila. Newspapers, Inc., 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (quoting Restatement (Second) of Torts § 652E).  To be "highly offensive," a publication must "cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Id. (internal quotation marks omitted).  Furthermore, "[i]t is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy." Curran, 578 A.2d at 13 (quoting Restatement § 652E cmt. c).  The publicity requirement differs from the publication

requirement of defamation in that the matter must be "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Id. at 12 (quoting Restatement § 652D cmt. a).

Despite the plaintiffs' conclusory statements in support of their false light claim, it is apparent that the only statement specifically alleged in the Complaint that could support a false light claim is the same statement discussed above in reference to the defamation claims. This statement by Columbus, which does not even refer to the plaintiffs, is plainly not of the type that could cause shame or humiliation in a reasonable person. Furthermore, any alleged negative import of the statement depended upon the receiver's knowledge that the plaintiffs claimed to own a license to conduct fiber optics business in Jamaica and the further leap that Columbus's statement was inconsistent with the plaintiffs' claim. For this reason, the publication of Columbus's statement on NWN USA's website could not have amounted to a publication of information casting the plaintiffs in a false light that was "substantially certain to become . . . public knowledge." Curran, 578 A.2d at

13.  The plaintiffs' false light claim therefore could not pass muster even under Pennsylvania law.[13]

The plaintiffs assert that the only difference between a commercial disparagement claim and one for injurious falsehood is that commercial disparagement can only be alleged by a corporation or business.  See Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 246 (Pa. 2002) (discussing various names for commercial disparagement tort).  As discussed above in reference to the injurious falsehood claim, the alleged statements do not relate to any "good or service" offered by First City, and furthermore the Complaint fails to allege special damages.  See Brooks Power Sys., Inc. v. Ziff Commc'ns, Inc., No. Civ. A. 93-3954, 1994 WL 444725, at *3 (E.D. Pa. Aug. 17, 1994) ("[C]ommercial disparagement involves the near impossible burden of proving special damages . . . ." (internal quotation marks omitted)).  For these reasons, the commercial disparagement claim would be dismissed under Pennsylvania law.

Finally, as for the civil conspiracy claim, Pennsylvania law appears to differ from New York law only with respect to the nature of the agreement between the parties that must be established.  See Savitsky, 2004 WL 2454120 at *3 n.3.  However,

---

[13]  The "of and concerning the plaintiffs" requirement of defamation law is also applied to false light claims in Pennsylvania, and the plaintiffs have also failed to meet this requirement in their pleadings.  See Weinstein v. Bullick, 827 F. Supp. 1193, 1202 (E.D. Pa. 1993).

Pennsylvania also requires that civil conspiracy be predicated upon an underlying tort.  E.g., Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000); Brock & Co. v. Kings Row Assocs., No. Civ. A. 04-CV-2096, 2004 WL 2624864, at *4 & n.6 (E.D. Pa. Nov. 17, 2004) (memorandum opinion). Because all of the other alleged torts have been dismissed, the civil conspiracy claim must also be dismissed under Pennsylvania law.

For these reasons, the false light invasion of privacy, commercial disparagement, and civil conspiracy claims are all **dismissed**.


## IV.

Finally, the defendants argue that because the plaintiffs filed pleadings containing the same allegations twice in the Eastern District of Pennsylvania before filing this action, and because their allegations here remain insufficient to support any cause of action, the Court should dismiss the Complaint with prejudice.  The plaintiffs have not requested leave to replead, and at the argument of this motion plaintiffs' counsel represented that the plaintiffs are content to rely upon the current Complaint, along with the licenses submitted by the defendants (see Exs. D & E to Koff Aff.), which are treated as incorporated by reference.

At its core, the Complaint alleges only one specific statement published on NWN USA's website to support any of its tort claims.  That statement did not mention the plaintiffs at all, and the Court has concluded that it cannot support any of the claims asserted.  Furthermore, the Complaint fails to plead a basis for the plaintiffs' standing to bring this action.  In light of these considerations, and the plaintiffs' ample opportunities to correct their pleadings, the Court finds that dismissal with prejudice is justified here.  Cf. Van Buskirk, 325 F.3d at 91-92; Dooner, 2003 WL 135706 at *4 ("Three bites at the apple is enough.").

CONCLUSION

For all of the reasons discussed, the plaintiffs' Complaint is **dismissed with prejudice** as to all defendants except NWNI, as to whom the action is **stayed**.

SO ORDERED.

Dated:     New York, New York
           March 27, 2007

                                          John G. Koeltl
                                     United States District Judge

44